UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GENELLE D. | : |
| | : |
| v. | :     C.A. No. 23-00075-MSM |
| | : |
| KILOLO KIJAKAZI, Commissioner | : |
| Social Security Administration | : |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

    This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Disability Income ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on February 22, 2023 seeking to reverse the Decision of the Commissioner.  On July 28, 2023, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (ECF No. 10).  On August 28, 2023, Defendant filed a Motion to Affirm the Commissioner's Decision.  (ECF No. 12).  On October 11, 2023, Plaintiff filed a Reply to the Commissioner's Brief.  (ECF No. 16).

    This matter has been referred to me for preliminary review, findings, and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 10) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 12) be GRANTED.

I.  **PROCEDURAL HISTORY**

Plaintiff filed an application for SSDI on December 8, 2020 (Tr. 206-215) and for DIB on December 9, 2020 (Tr. 216-217) alleging disability since May 30, 2018. The Applications were denied initially on January 19, 2021 (Tr. 56-63, 65-72) and on reconsideration on February 16, 2021. (Tr. 74-81, 83-90). Plaintiff requested an Administrative Hearing. On November 9, 2021, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 35-54). The ALJ issued an unfavorable decision to Plaintiff on November 24, 2021. (Tr. 16-30). The Appeals Council denied Plaintiff's request for review on October 7, 2022. (Tr. 5-7). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

II.  **THE PARTIES' POSITIONS**

Plaintiff argues that remand is necessary because the ALJ's findings are not supported by the record and because the ALJ's Step 4 and 5 findings are flawed.

The Commissioner responds that there are no errors of law, and the ALJ's findings are fully supported by the record and, thus, must be affirmed. In addition, the Commissioner asserts that any potential Step 4 error is harmless on this record.

III.  **THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart,

274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe,

making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence.  The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone.  See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers).  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors.  Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements).  Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§

404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or

chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

### B.  Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.    Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

    **1.**    **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions; and

   (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 4790249, at *49465.

  **2.** **Credibility**

  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

  A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).  Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017).  It directs the ALJ to consider the entire case record, including

the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

## V. APPLICATION AND ANALYSIS

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Steps 4 and 5. At Step 2, the ALJ determined that Plaintiff had the following severe impairments: spine disorder, status-post tibial fracture, and status-post ankle fracture. (Tr. 22). Alcohol dependence, alcohol-related pancreatitis, obesity and anemia were non-severe impairments. (Tr. 22-23). The ALJ assessed an RFC for a limited range of light work. (Tr. 24). Based on this RFC and opinion testimony from the VE, the ALJ found at Step 4 that Plaintiff could perform her past relevant work as a billing analyst, a semi-skilled sedentary job. (Tr. 28). The ALJ also went on to make an alternate Step 5 finding that Plaintiff was not disabled because she was also capable of performing certain unskilled, light and sedentary jobs available in the economy. (Tr. 29).

### B. Plaintiff Has Not Shown Any Step 4 or 5 Error Warranting Remand

First, Plaintiff argues that the Step 4 finding is flawed because the ALJ misidentifies her past work as "billing analyst" and not "billing typist." (ECF No. 10 at pp. 18-19). Plaintiff herself identified her past work as "analyst" (Tr. 41) and "billing analyst." (Tr. 339-340). At the hearing, the ALJ specifically asked the VE to "characterize the past work that I previously identified as the billing analyst," and the VE unequivocally responded that Plaintiff worked as a "billing typist, [DOT] 214.382-014, with an SVP of 4." (Tr. 49). The VE also opined that Plaintiff's RFC, as set

forth in a hypothetical posed by the ALJ, did not preclude this work as customarily performed. (Tr. 50). That testimony provides a sufficient basis for the ALJ's Step 4 finding, (Tr. 28), and any confusion as to the specific job title is harmless error at worst. It is clear from the record that everyone was talking about the same job, regardless of the title, and that the VE unequivocally opined that Plaintiff's RFC did not preclude that work. There is no error.

Second, Plaintiff argues that the Step 4 finding is erroneous because of an inconsistency between the RFC and the hypothetical posed to the VE. (ECF No. 10 at pp. 20-21). While there is a minor discrepancy between the two, the Commissioner persuasively argues that such deviation is not outcome determinative and, thus, not cause for remand. (ECF No. 12 at pp. 13-14). The discrepancy involves exposure to workplace hazards such as machinery and heights. Since jobs relevant to the ALJ's Step 4 or 5 findings (billing typist, laundry folder, order clerk, charge account clerk, telephone quotation clerk (Tr. 50-51)), do not involve exposure to such hazards, the Commissioner persuasively argues that the absence of a limitation in the hypothetical to avoid them is immaterial. See Perez v. Colvin, No. 13-30204-KPN, 2014 WL 6905599, at *2 (D. Mass. Dec. 4, 2014) (finding harmless error and noting that "even were the ALJ's hypothetical identical to his RFC assessment, the [VE] would no doubt have identified the very same jobs that Plaintiff could perform and upon which the ALJ could rely.") (citations omitted).

Finally, Plaintiff faults the ALJ for making an alternate Step 5 finding unfavorable to her, arguing that it is not permitted by the Regulations. However, such alternate findings are routinely made by ALJs and promote clarity and efficiency. This Court recently recognized that "[a]lthough the First Circuit has not yet specifically addressed the question, the district courts in this Circuit have uniformly held that an ALJ may make alternative findings at Steps Four and Five and, if there is error at Step Four, it is harmless as long as the ALJ's alternative Step Five finding is sustained."

Patrick F. v. Kijakazi, No. 22-212MSM, 2023 WL 2770389, at *8 (D.R.I. April 4, 2023) (citations omitted).

      **C.**      **The ALJ's RFC Finding is Supported by Substantial Evidence and Must Be Affirmed.**

It is undisputed that the only medical opinion evidence in the record comes from the State Agency Consulting Physicians, Dr. Hall and Dr. Pressman. (Exhs. 2A and 6A). There are no treating source opinions to either contradict the opinions of Dr. Hall and Dr. Pressman or to corroborate Plaintiff's allegations regarding her pain and limitations. (Tr. 27).

First, the ALJ found the opinions of Dr. Hall and Dr. Pressman to be "informed, supported and fully persuasive, as they are consistent with the record as a whole, and are based on their particular and detailed knowledge and expertise of the standard of disability as set forth by the Commissioner, with the exception that [Plaintiff] never regained the ability to stand/walk for 6 hours in an 8-hour workday." (Tr. 27). Plaintiff has not shown any legal error in the ALJ's analysis or lack of sufficient support in the record for his findings.

Plaintiff's argument is also undermined by factual errors. Plaintiff argues that there is "no evidence that Dr. Pressman reviewed [her] records." (ECF No. 10 at p. 10). However, Dr. Pressman electronically signed his opinion stating that he had "reviewed the provided [medical record] in its entirety and the assessment by Dr. James Hall on 01/17/2021 is affirmed as written. RFC unchanged." (Tr. 75, 84). Further, the opinion form in question plainly identifies the records obtained and denotes which were present on initial review and newly obtained for reconsideration by Dr. Pressman. (Compare Tr. 56-57, 65-66 with Tr. 75-76, 83-84). See Pierce v. Astrue, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *4 (D.Me. July 7, 2011), R&R adopted, 2011 WL 3270251 (D.Me. July 29, 2011) ("[T]he language of the standardized form [for state agency

consulting opinions] suggests that a nonexamining consultant should be presumed to have reviewed all then-available file evidence absent an indication otherwise.").

Plaintiff also claims that the ALJ "did not, in fact, review the state agency consultant records in detail." (ECF No. 10 at p. 11). However, the argument is unsupported and based upon a misreading of the record. In effect, Plaintiff confuses findings pertaining to different periods under consideration for Plaintiff's SSDI and DIB applications. (Compare Tr. 67-68 related to period 9/23/20-9/22/21 with Tr. 78 related to period 5/30/18-9/22/20). Plaintiff incorrectly reads these findings as Dr. Hall finding no stand/walk limitation, while Dr. Pressman found a four-hour stand/walk limitation. (ECF No. 10 at p. 11). In short, the record actually reflects that Dr. Pressman adopted Dr. Hall's RFC, and there was no difference as claimed by Plaintiff. The difference was that the physicians assessed RFCs for two different time periods and found that Plaintiff had improved slightly and was somewhat less limited as to stand/walk in the more recent period. (Exhs. 2A, 4A, 6A and 8A). Since the ALJ ultimately adopted the more restrictive RFC with the four-hour stand/walk limitation, this is an exercise in futility for Plaintiff with no possible prejudice shown.

Absent any persuasive and supported challenge to the ALJ's treatment of the opinions of Dr. Pressman and Dr. Hall, Plaintiff's only potential attack on the ALJ's RFC finding is that he should have adopted a more limited RFC based on her statements of pain and other symptoms. In his Decision, the ALJ found that Plaintiff's statements were not entirely consistent with the record and that the medical evidence does not fully support Plaintiff's complaints as to symptom severity, functional limitations, and resulting disability. (Tr. 25).

Plaintiff argues that the ALJ did not "adequately consider the totality of the medical and non-medical evidence of record" in discounting her pain complaints. (ECF No. 16 at p. 1). She

argues that the ALJ disregarded significant portions of the medical record that supported her complaints. Id. at p. 4. Finally, she contends that the ALJ compounded this error by failing to adequately support his decision to discount her otherwise unrefuted descriptions of her limited activities of daily living. Id.

There is no doubt that Plaintiff had a difficult two-year medical period from late 2018 to late 2020. It started with a fall from a stone wall on December 8, 2018 that resulted in a right leg break and related injuries which required surgery. She was later diagnosed with a herniated disc in April 2019 and had back surgery shortly thereafter. Finally, in September 2020, Plaintiff fell after stepping into a pothole and fractured her right ankle which required surgery. It is also undisputed that those impairments could reasonably be expected to cause pain and other limitations which is why the ALJ limited Plaintiff to a reduced range of light work. The parties differ as to the extent of such pain and limitations, and the issue presented is whether the ALJ's conclusions are supported by substantial evidence. See Bennett v. Berryhill, 256 F.Supp.3d 93, 97 (D. Mass. June 20, 2017) ("[A]s the Commissioner's determinations are 'supported by substantial evidence,' they must be affirmed, 'even if the record…could justify a different conclusion.'") (quoting Rodriguez Pagan, 819 F.2d at 3).

Plaintiff's argument here is largely a request that the Court engage in an improper reweighing of the evidence. Barbosa v. Berryhill, C.A. No. 16-168S, 2017 WL 1233833, at *7 (D.R.I. Feb. 15, 2017), adopted, 2017 WL 1233819 (D.R.I. Apr. 3, 2017). This Court reviews the ALJ's subjective symptom evaluation with deference. Frustaglia, 829 F.2d at 195. Plaintiff has failed to show that the reasons articulated in the ALJ's decision regarding her pain did not meet the "substantial" threshold as articulated in Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

While reasonable minds might disagree as to the weight accorded to Plaintiff's complaints, Plaintiff has not shown any legal error or lack of record support for the ALJ's findings. The ALJ thoroughly discussed the medical record and clearly summarized the reasons he found Plaintiff's complaints only "partially consistent" with the record. (Tr. 27).

The ALJ acknowledged Plaintiff's fall in December 2018, which resulted in knee surgery (Tr. 25, 572), but then cited the May 17, 2019 imaging of Plaintiff's knee showing normal alignment and a healing fracture. (Tr. 25, 2022). During physical therapy in June 2019, Plaintiff reported she was told to try to wean off her crutches and walking boot. (Tr. 25, 1654). By November 2019, Plaintiff reported independent ambulation and used the "cruising method" with upper extremity support due to a lack of confidence. (Tr. 25, 1585). At a subsequent visit, Plaintiff again reported independent walking in her home, though she still used crutches due to a lack of confidence. (Tr. 25, 1591).

Following the 2020 right-ankle injury, Plaintiff indicated to Dr. Hayda that she had been full-weight bearing from the prior injury for six months. (Tr. 26, 2113). At a subsequent visit, Plaintiff indicated she had been walking without an assistive device prior to her ankle injury. (Tr. 26, 2141). The ALJ also noted her November 2020 visit with Dr. Levins where she was doing well but still not weight-bearing. (Tr. 26, 571). Approximately two months later, Dr. Levins reported that imaging showed a healed right ankle. (Tr. 26, 2170). A month following that appointment, Plaintiff was told to wean from her walking boot. (Tr. 26, 2175-2177).

In May 2021, Plaintiff reported feeling much better after her last treatment in physical therapy. (Tr. 26, 1560). At this visit, Plaintiff denied any functional limitations in performing daily tasks. (Tr. 1560). In June 2021, Plaintiff informed Dr. Troise that she was doing better. (Tr. 27, 1717). While Plaintiff continued to wear a walking boot, musculoskeletal examination

-17-

revealed normal tone and motor strength, no malalignment or tenderness in joints, no edema, and normal gait. (Tr. 27, 1717).

Finally, the ALJ accurately noted that there was no objective evidence or medical-source opinions to corroborate Plaintiff's allegations. (Tr. 27). See, e.g., Mosconas v. Saul, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020) ("Appellant had the burden of establishing the extent of her limitations which the ALJ then used to determine her RFC. The Commissioner merely had the burden of showing that her RFC, so determined, permitted substantial gainful activity."); and Kellilea F. v. Kijakazi, No. 21-410-JJM, 2022 WL 2128625, at *8 (D.R.I. June 14, 2022) ("Plaintiff does not point to any opinion finding that she would miss work or be off task in a way that conflicts with the ALJ's RFC finding and would support her burden of proof").

Plaintiff also argues that the RFC should have included a limitation to using a cane or walker based solely on her statements that she used one. (Tr. 41). However, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). It is Plaintiff's burden to demonstrate an assistive device was medically required, including providing medical documentation describing the circumstances for which it is needed. Plaintiff has not met that burden here. There is no medical documentation regarding the need for a cane or other assistive device. In fact, Plaintiff was instructed to wean off assistive devices. (Tr. 1574, 1654). Given Plaintiff's statements that her use of an assistive device when walking was based on confidence rather than pain and the dearth of medical evidence to

support the need for any assistive device, her argument that the ALJ erred in not providing for use of a cane in the RFC is unsupported.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 10) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 12) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 15, 2023